IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IRMA E. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07CV669-SRW |
| | ) | (WO) |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Irma E. Smith brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

## PROCEDURAL BACKGROUND

Plaintiff was born on October 29, 1953. (R. 51). She worked as a convenience store cashier from 1986 until 1999. (R. 60). On March 17, 2005, she filed an application for disability insurance benefits, apparently contending that she is disabled due to Von Willebrand's disease, a bleeding disorder.[1] Medical records submitted by the plaintiff or

---

[1] Plaintiff's typed application form – as is normally the case – does not indicate the basis of plaintiff's claim for disability. (R. 47-50). The leads/protective filing worksheet contains a typewritten remark of "[v]on Willebrand's Disease. (R. 51). The record includes no Adult Disability Report (SSA Form

obtained by the Commissioner during initial administrative processing included: (1) a single page letter written to the plaintiff by her physician in 1979, diagnosing von Willibrand's disease  (Exhibit 1-F); (2) ten pages of treatment notes from Dr. Kenneth Crowe – plaintiff's primary care physician – for the period between May 1995 and March 2005, showing intermittent treatment for a variety of medical problems, including gall bladder surgery in 1995, dysphagia and infection of her left great toe (four office visits in 1997), occipital pain (one visit in 2001), sinusitis, bronchitis, and allergies (one visit in 2003) and mole removal (two visits in 2005)(Exhibit 2-F); and (3) treatment notes for three visits in 2005 to Dr. Barry Barrett for weight management (Exhibit 3-F).   Plaintiff's claim was denied at the initial administrative level. (R. 27).

Plaintiff requested a hearing before an ALJ.  On the appeal form, she stated, "If I tell anyone that I have Von Willebrand Disease they say what's that and if I tell them the truth they say I'm sorry But we can't take the change [sic] that you may get cut.  So if I get a Job I have't [sic] to lie and say I can do the job I'm fine."  (R. 33).  At the hearing, which was conducted on November 8, 2006, plaintiff provided reports of two polysomnograms conducted in August and September 2006 and which resulted in a diagnosis of obstructive sleep apnea.  (Exhibit 5F).  She also submitted an October 2006 treatment note from Dr. Gil Holland of Covington Bone and Joint, P.C., recording plaintiff's complaint of hip and knee pain that has been "going on for years" and diagnosing plaintiff's degenerative arthritis of

3368), on which claimants indicate the illness(es) and symptoms which limit their ability to work, as well as their medical treatment, educational and work histories.

the knees and hips, "most prominent in the patellofemoral joint of both knees." (Exhibit 6-F, see also R. 3). Plaintiff also submitted an August 2006 medical bill from Montgomery Cardiovascular Associates, which included billing for hospital observation, an angiogram and a heart catheterization in July 2006 (Exhibit 6-E), a medical bill for surgical removal of a colon polyp in April 2006 (Exhibit 7-E), and forms listing plaintiff's medications, recent medical treatment, and work background (Exhibit 8-E). In the latter exhibit, plaintiff wrote that Dr. Holland found that she had to have both knees and both hips replaced. (R. 76). Plaintiff also submitted a handwritten letter in which she describes von Willebrand's disease generally, but provides no information regarding her own symptoms or problems. (Exhibit 5-E).

Plaintiff was not represented during the initial administrative processing of her case, or at the hearing before the ALJ. At the hearing – which lasted seven minutes – plaintiff testified, in response to questioning from the ALJ, that she has a fourth or fifth grade education and was in "special ed." (R. 109). She indicated that she lives with her husband, a truck driver, in a house that they are buying. She worked for several weeks during the past year as a housekeeper at the Day's Inn and her previous work was at convenience stores. She is five feet tall, weighs "about 258 pounds" and smokes less than a pack a day. She has been admitted to the hospital within the past two years, for her heart and for sleep therapy. She is not being treated at any mental health center or by any psychiatrist, and has not had surgery in the five years preceding the hearing. After this testimony, the ALJ asked plaintiff if she wanted to tell him anything else. She testified as follows:

3

A. Well, I guess, I don't know, do you know what [inaudible] disease is?

Q. Yes.

A. You do. There's so many people that doesn't know what it is. It's I guess basically I know that I've learned a lot about it myself even that I have it. I did not know that a lot of the problems that I've having now, the problems with my heart, problems with my joints and knees and stuff like that, I did not know any of that until – actually my daughter has it also. My mother has it. I'm sure my sister probably had it but she's not with us anymore so – but it's hereditary, [inaudible] disease is. It's just something that there's no cure for it. I realize that. If you go to get a job and ask for a job and they say, can you do this job and you say, yes, I can, and then when – if you write down and tell the truth, that you have [in audible] disease, they'll back up from you and say do what? What is that? It's just kind of like they don't want to deal with you because if you tell – basically the only way I get a job is to lie and that's I'm telling you the truth. You tell someone you've got that disease and you explain to them what it is, they look at you and say, uh, we'll call you. It just don't – you know, they don't want you in their place of business simply because they know what the deal is with it. I've – like I said, I've learned –

ALJ: Well, I do want to thank you for coming. I am going to review what you told me and I will review the medical evidence, the law the regulations. When I make my [d]ecision, you'll be notified in writing by mail.

(R. 108-12). The ALJ rendered his decision on November 30, 2005, in which he found that plaintiff did not have a "severe" impairment or combination of impairments through the date last insured – June 30, 2003 – and, thus, that she was not disabled as defined in the Social Security Act from the alleged onset date through the date last insured.

After the ALJ denied plaintiff's claim, plaintiff retained counsel. Her attorney submitted a letter to the Appeals Council which was sent to the attorney by Dr. Crowe on January 17, 2007. The letter states:

I saw Irma Smith today, a 52 year-old woman who you have already met. I certainly do feel that she is disabled for any gainful employment at this time. this is secondary to her severe osteoarthritis involving most joints, but

4

> primarily her hips and knees.  This makes ambulation very difficult for her.
> She also has underlying von Willebrand's disease and obstructive sleep apnea
> as well as obesity.  I had her see Dr. Holland in orthopedic consultation and he
> is in agreement, has offered her joint replacement surgery which he feels is
> probably the only thing that will give her any significant relief.

(R. 105).   On May 17, 2007, the Appeals Council denied plaintiff's request for review.

In this court, plaintiff has filed an additional note written by Dr. Crowe in July 2007

in response to an inquiry from plaintiff's counsel.  The note reads:

> Irma Smith has had severe osteoarthritis for a number of years now. I believe
> this was the case prior to June 30, 2003.  As osteoarthritis is a progressive
> disease it certainly is likely to have worsened since 2003.

(Attachment to Plaintiff's brief, Doc. # 13).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The

court does not reweigh the evidence or substitute its judgment for that of the Commissioner.

Rather, the court examines the administrative decision and scrutinizes the record as a whole

to determine whether substantial evidence supports the ALJ's factual findings.  Davis v.

Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.

Factual findings that are supported by substantial evidence must be upheld by the court.  The

ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity

attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985

F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails

to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

### DISCUSSION

The plaintiff challenges the ALJ's decision denying her claim and the Appeals Council's decision to deny review, arguing that the ALJ erred by finding that plaintiff's von Willebrand's disease is not a "severe" impairment and by failing to develop the record adequately, and also maintaining that the Appeals Council erred by denying review in view of new evidence presented by the claimant.

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" Sims v. Apfel, 530 U.S. 103, 110-11 (2000).  "'It is well established that the ALJ has a basic duty to develop a full and fair record.' . . . Indeed, the ALJ must develop the facts fully and fairly and probe conscientiously for all the relevant information, even where a claimant is represented by counsel."  Wind v. Barnhart, 133 Fed. Appx. 684 (11th Cir. 2005)(citations omitted).  In this case, the ALJ failed in his basic duty to develop the record and his decision is not supported by substantial evidence.[2]

The ALJ determined that, through the date last insured, plaintiff did not have a severe

---

[2] Plaintiff's waiver of counsel may also be invalid, given her testimony that she has a fourth or fifth grade education and was in "special ed," the ALJ's incomplete statement of plaintiff's right to representation, and the ALJ's failure to inquire as to whether plaintiff had read and understood previous correspondence from the Commissioner regarding her right to representation. (See hearing transcript at R. 108)("I am required by law to inform you that you do have the right to have an Attorney to represent you.  You're not required to, nor do I have the authority to appoint you one, but you may obtain one on your own if you so desire.").  The court need not reach this issue, however, because the ALJ failed in his basic duty to develop the record.

impairment or combination of impairments. He stated:

> In her Disability Report, the claimant alleged being functionally impaired *only* by von Willebrand disease. The claimant made no mention of any restrictions posed by her obesity or any additional impairment. At the hearing, the claimant testified that her main medical problem is von Willebrand disease, and that she does not have a mental impairment.

(R. 19). As noted previously, the transcript does not include a Disability Report. It does include a "work activity report" (which the ALJ later references as a "disability report"), but this form does not include the claimant's explanation of her impairments or their functional limitations. (See Exhibit 1-E). Additionally, after she testified that she attended school through the fourth or fifth grade in special education,[3] the ALJ asked no follow-up questions regarding whether plaintiff had any mental limitation. At the November 2006 hearing, plaintiff was unable to remember the dates of her hospital admission for "sleep therapy" two months earlier or her angiogram and heart catheterization sixteen months earlier. (R. 72, 100, 111). When the ALJ asked if plaintiff had been admitted overnight within the past two years, plaintiff responded, "I was in Montgomery. I wrote it down on a piece of paper. I don't remember. I looked back at the papers and seen the dates to put that down. And that was for my heart and I was in sleep therapy and my heart – and well, I was in Memorial in [INAUDIBLE], Alabama. . . . I don't remember dates too well. I'm not good with dates." (R. 110-11). Plaintiff *did* respond negatively when the ALJ asked "Are you being treated at any mental health center or by any psychiatrist?" However, she did not – as the ALJ indicated in his decision – testify that she does not have a mental impairment. (See R. 108-

---

[3] The disability specialist requested plaintiff's school records from Andalusia High School. The form was returned with the handwritten annotation, "No records to report[.]" (R. 67).

12).

Additionally, the ALJ had evidence before him that plaintiff had complained to an orthopedic specialist in October 2006 of having experienced hip and knee pain "for years" (R. 102) and that, according to plaintiff, Dr. Holland had determined that she "had to have both knees replace and both hip [sic]." (R. 76). When the plaintiff made her brief statement to the ALJ at the hearing, she referenced "problems with my joints and knees and stuff like that," but the ALJ made no further inquiry regarding the nature of these problems, when she began to experience any such problems, or any functional limitations she may have experienced. (See R. 111-12). Although the ALJ asked plaintiff how tall she is ("five foot tall") and how much she weighs ("[a]bout 258 pounds"), he did not ask any questions regarding whether plaintiff's joint problems and/or her obesity had caused her any functional limitations before her date last insured. Neither did he request further information from plaintiff's orthopedic physician or order a consultative examination in an attempt to discern the extent of plaintiff's degenerative arthritis and whether it would have caused functional limitations before June 2003.

The administrative transcript contains no statement from the plaintiff in her SSA application forms regarding any functional limitations. Despite the lack of such a statement, the ALJ failed to inquire of the plaintiff regarding the extent of any functional limitations she may have experienced before her date last insured. Additionally, because plaintiff apparently did not complete the SSA form regarding her medical treatment history at the time of her

application,[4] the court is unable to determine whether the Commissioner satisfied his responsibility to develop the record regarding plaintiff's medical history for the twelve months preceding the application.  See 20 C.F.R. 404.1512(d).

Further, in reaching his severity determination, the ALJ relied in part on the opinion of the State agency physician, Dr. Bertucci, that plaintiff's impairment of von Willebrand disease was not "severe" on or before June 30, 2003.  (R. 22).  However, although Dr. Bertucci signed the initial determination indicating that the claimant was not disabled through June 30, 2003, Dr. Bertucci's rationale for that conclusion is not attached to the disability determination. (R. 27).

The record in this case does not establish plaintiff's entitlement to disability. However, where the claimant apparently was never even asked to describe how her impairments affected her functional abilities, the record reveals the kind of evidentiary gap requiring remand for further proceedings.  The existing evidence of record does not provide substantial support for the ALJ's conclusion that plaintiff did not suffer from any severe impairment or combination of impairments before her date last insured.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ failed in his basic obligation to develop a full and fair record and, accordingly, that the decision of the Commissioner is due to be REVERSED and remanded for further proceedings.  A separate judgment will be entered.

---

[4]  The undated medical history form in the record was filed at the time of the hearing and pertains only to plaintiff's "recent medical treatment."  (R. 2, 76).

9

DONE, this 29th day of September, 2008.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE